**CORFAB, INC., Plaintiff,**

v.

**MODINE MANUFACTURING CO., Defendant.**

**No. 86 C 165.**

United States District Court, N.D. Illinois, E.D.

Aug. 1, 1986.

Arthur Susman, Jack Joseph, Judith Kolman, Joseph, Susman & Myers, Chicago, Ill., for plaintiff.

David F. Buysse, Garofalo, Hanson, Schreiber & Vandlik, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Corfab, Inc. ("Corfab") has filed a three-count Complaint against Modine Manufacturing Co. ("Modine"), sounding in:

1. breach of warranty (Count I);

2. strict liability (Count II); and

3. negligence (Count III);

all arising out of the breakdown of some heating units sold by Modine to Corfab. Modine has now moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Corfab's Complaint. For the reasons stated in this memorandum opinion and order, Modine's motion is granted in part and denied in part.

### Facts [1]

In April 1981 Corfab bought a heating system comprising high efficiency heating units manufactured by Modine (¶ 6). Corfab installed those units in its Chicago factory building in April and May 1981 (¶ 8). Modine made several express and implied warranties before Corfab bought the heating units (¶ 7), and Corfab relied on those warranties in making its purchase (¶ 8).

Modine advised purchasers of its heating system not to locate the heating units where chlorinated, halogenated or acid vapors are present in the atmosphere, for those gases cause deterioration of the Modine units (¶ 10). That posed no known problem to Corfab, for its manufacturing operations do not produce those gases, but Modine did not tell Corfab such vapors exist in the atmosphere of any city such as Chicago (*id.*).

After Corfab installed the heating system, the Modine heating units "corroded, deteriorated and disintegrated" from normal use until they reached a weakened condition (¶ 11). On December 26, 1984 Corfab turned on its heating system to heat its factory building (*id.*). At that time a "sudden and calamitous" breakdown of most of the heating units occurred, releasing carbon monoxide and other toxic gases into the factory building (*id.*). Corfab suffered damages as a result (¶¶ 12–13):

---

1. For purposes of this motion, the Court has accepted as true the Complaint's well-pleaded factual allegations, drawing all reasonable factual inferences in Corfab's favor. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). All further citations to the Complaint will simply take the form "¶ —."

1. It spent money analyzing the damage caused by the heating units' breakdown.

2. It has already installed some new heating units and will have to replace more units in the future.

3. It had to provide health assistance to its injured employees and paid them wages even though they could not work in the factory building.

4. It spent additional time and money putting its business back into operation.

5. Its business was interrupted, and it consequently lost profits and good will.

### Modine's Position

Modine advances three contentions in support of its dismissal motion:

1. Corfab's breach of warranty claim (Count I) is barred by the statute of limitations.

2. Corfab cannot recover purely economic losses under either a strict liability theory (Count II) or a negligence theory (Count III).

3. Corfab lacks standing to recover damages for any money it paid to its employees for their physical injuries.

This opinion will consider each argument in turn.

### Breach of Warranty Claim

Ill.Rev.Stat. ch. 26, ¶¶ 2-725(1) and (2) provide:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of

action accrues when the breach is or should have been discovered.

Here Modine tendered delivery of the heating units no later than May 1981 (¶ 8). Corfab sued January 9, 1986—more than four years later. It has not brought subparagraph (2) into play by alleging Modine's warranties extended to the future performance of the goods. Indeed Corfab's memorandum gives no answer at all to Modine's statute of limitations argument. Complaint Count I is dismissed.

### Economic Loss

■ Modine says Corfab's Complaint ¶¶ 12–13 seeks to recover purely economic losses, nonrecoverable under either a strict liability theory or a negligence theory. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 81–91, 61 Ill.Dec. 746, 751–56, 435 N.E.2d 443, 448–53 (1982) (citations omitted)—though only four years old—has already become the seminal Illinois authority in that respect:

Our examination of the considerable number of arguments advanced on both sides of the issue leads us to reject imposition of a strict liability in tort theory for recovery of solely economic loss.

We do hold, however, that when a product is sold in a defective condition that is unreasonably dangerous to the user or consumer or to his property, strict liability in tort is applicable to physical injury to plaintiff's property, as well as to personal injury.... This comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, *i.e.*, when a product is unfit for its intended use.

\*      \*      \*      \*      \*      \*

"Economic loss" has been defined as "damages for inadequate value, costs of

repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property * * * " ... as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." ... These definitions are consistent with the policy of warranty law to protect expectations of suitability and quality.

The demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred.... As one commentator observed in applying the definition of economic loss with respect to damage to the product:

"When the defect causes an accident 'involving some violence or collision with external objects,' the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. It is also important to distinguish between 'direct' and 'consequential' economic loss. * * * Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product."

* * * * * *

We ... hold that, where only the defective product is damaged, economic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations cannot be recovered under a strict liability theory....

Our conclusion that qualitative defects are best handled by contract, rather than tort, law applies whether the tort theory involved is strict liability or negligence. Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract.

* * * * * *

The policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well. When the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery.... Moreover, as was true with strict liability, if a manufacturer were held liable in negligence for the commercial loss suffered by a particular purchaser, it would be liable for business losses of other purchasers caused by the failure of its product to meet the specific needs of their businesses, even though the needs were communicated only to the dealer.

* * * * * *

In summary, extension of the tort theories of strict liability, negligence or innocent misrepresentation to cover solely economic losses would, in effect, make a manufacturer the guarantor that all of its products would continue to perform satisfactorily throughout their reasonably productive life.... For this reason, as well as the numerous policy reasons stated, we follow the decisions of the majority of courts and commentators and hold that plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation.

Corfab proffers three ways to escape dismissal under *Moorman:*

1. Corfab's economic losses stemmed from a "sudden and dangerous" occurrence.

2. Corfab's employees suffered physical harm from the toxic gases released when the heating units broke down.

3. Corfab can recover its economic losses under a theory of intentional misrepresentation.

Because the first of those contentions prevails, this Court need not address the others.

Corfab says *Moorman* does not bar recovery in tort of "economic losses" if they result from a "sudden or dangerous occurrence" as referred to in *Moorman*. According to Corfab, its Complaint ¶ 11 plainly so alleges:

[A] sudden and calamitous ... breakdown of most of the heating units occurred, releasing carbon monoxide and/or other toxic gases into the building.

Modine correctly points out Corfab also alleges the heating units had "corroded, deteriorated and disintegrated" (¶¶ 10–11). From Modine's perspective, that allegation fatally contradicts Corfab's claim of a "sudden and calamitous" event.

True enough, a merely conclusory assertion of a "sudden" event will not do the job. See *Bagel v. American Honda Motor Co.*, 132 Ill.App.3d 82, 87, 87 Ill.Dec. 453, 457, 477 N.E.2d 54, 58 (1st Dist.1985) (rejecting plaintiff's allegation of a "sudden occurrence" and concluding plaintiff's damages resulted from a qualitative defect). But *Moorman*'s language, in distinguishing between a "sudden or dangerous occurrence" on the one hand and "deterioration" on the other, does not pose those terms as mutually exclusive alternatives exhausting the universe. Just placing a situation under one rubric or the other does not adequately capture the policy analysis Illinois courts have developed in categorizing damages. Modine cannot prevail simply by pointing to the "corroded, deteriorated and disintegrated" language of Corfab's Complaint, any more than Corfab can prevail simply by pointing to its "sudden and calamitous ... breakdown" language.

In fact Illinois courts use the "sudden or dangerous event" and "deterioration" labels as rhetorical surrogates for assessing the risks posed by the alleged defect. *Bagel* illustrates that usage. There a defective cam chain caused a motorcycle engine to seize and stop operating "suddenly." *Bagel* held the plaintiff's losses did not result from a dangerous occurrence (132 Ill.App.3d at 87, 87 Ill.Dec. at 457, 477 N.E.2d at 58):

Whether the damage to the engine resulted from gradual deterioration or internal breakage, it did not occur in a dangerous manner that posed an unreasonable risk of injury to plaintiff or his property. The loss related to plaintiff's disappointed commercial expectations.

This occurrence is clearly different from the truck accident in *Vaughn* [*v. General Motors Corp.*, 102 Ill.2d 431, 80 Ill. Dec. 743, 466 N.E.2d 195 (1984)]. In that case, the brakes locked, causing the truck to overturn while plaintiff was driving the vehicle. The damage to the product in *Vaughn* resulted from a dangerous and calamitous event which threatened plaintiff with physical injury and property damage. The defect itself actually caused a risk of injury. Here, the damage to the product occurred while the engine was idling, not while the motorcycle was in use or motion. There was no sudden and calamitous event; there was no actual threat of injury to plaintiff or to his property.

Thus the Illinois cases, as exemplified by *Bagel*, permit recovery of economic losses when the damages *occur* in a way that poses an unreasonable risk of harm to plaintiff or its property.

Corfab's Complaint here describes such an event. It has alleged more than the heating units having deteriorated and consequently having stopped working (albeit suddenly). And of course such added allegations are essential—after all, by definition a machine that *stops* working does so "suddenly," and that was true in *Bagel* as well. By the same token, any type of breakdown of the heating units would have meant they failed to fulfill Corfab's economic expectations in buying the units.

Thus it is that a breakdown of the units—without more—would not permit recovery of economic damages under a tort theory. But the sudden breakdown described by Corfab's Complaint not only caused damage to the heating units themselves but also threatened to contaminate Corfab's factory building (¶ 12). And the sudden release of toxic gases clearly posed a serious health risk to Corfab's employees.

Corfab has thus alleged a breakdown that occurred "in a dangerous manner that posed an unreasonable risk of injury." *Bagel*, 132 Ill.App.3d at 87, 87 Ill.Dec. at 457, 477 N.E.2d at 58. And that is not altered by the breakdown's having been the sudden culmination of a gradual prior deterioration. See *Vaughn*, 102 Ill.2d at 434, 80 Ill.Dec. at 745, 466 N.E.2d at 197 (brake failure constituted a "sudden and calamitous occurrence" even though plaintiff experienced problems with brakes over a period of 19 months).

Corfab's Complaint therefore adequately states a cause of action under *Moorman* for recovery of economic damages. Both Count II (strict liability) and Count III (negligence) stand unimpaired.

### *Monies Paid to Corfab's Employees*

Modine also argues Corfab's claim for its employees' personal injuries is blocked by Ill.Rev.Stat. ch. 48, ¶ 138.5(b) ("Section 5(b)"):

(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

\* \* \* \* \* \*

In the event the employee or his personal representative fails to institute a proceeding against such third person at any time prior to 3 months before such action would be barred, the employer may in his own name or in the name of the employee, or his personal representative, commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee, and out of any amount recovered the employer shall pay over to the injured employee or his personal representatives all sums collected from such other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this Act, including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act, and costs, attorney's fees and reasonable expenses as may be incurred by such employer in making such collection or in enforcing such liability.

*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill.2d 106, 112–13, 90 Ill.Dec. 955, 958, 483 N.E.2d 273, 276 (1985) teaches:

Section 5(b) ... forbids the filing of a suit by the employer prior to three months before the expiration of the limitations period.

\* \* \* \* \* \*

Section 5(b)'s limitation on the employer's right to bring the original action against any third party until the employee has been given ample opportunity to institute his own action reflects the legislature's desire to protect the employee from an employer who desires only to recoup the amount it has paid in compensation and nothing more.

**454**

In all candor, this Court cannot tell whether that doctrine comes into play here at all. What the Complaint says about the subject is uninformative (¶ 13(c)):

13. Corfab was damaged by Modine's failures and breaches aforesaid, and by the resultant sudden and calamitous deterioration of the aforesaid heating units, in that:

\* \* \* \* \* \*

(c) Corfab was required to provide aid, health assistance, and pay salaries to its employees, even though they were unable to work in the atmosphere poisoned by defendant's heating units, in an estimated amount of $10,000.

Whether "aid" or "health assistance" was intended to embrace damages encompassed within Section 5(b) is anyone's guess. And Corfab's counsel have not helped at all: Their memorandum, intent on the *Moorman* analysis, has entirely failed to address the point.

Because the problem (if any) is so readily curable, this opinion will assume for the moment that Section 5(b)–type damages are in fact sought by Corfab. Here the accident occurred December 26, 1984 (¶ 11). Illinois' two-year statute of limitations for personal injury claims (Ill.Rev.Stat. ch. 110, ¶ 13–202) will expire December 26, 1986. Corfab cannot institute such an action for damages sustained by its injured employees before September 26, 1986. To the extent (if at all) Corfab's Complaint seeks to recover those damages now, it is premature and would have to be asserted by supplemental complaint after that date.[2]

### Conclusion

Complaint Count I is dismissed. Modine's motion to dismiss is denied in all other respects, and it is ordered to answer Complaint Counts II and III on or before August 12, 1986. This action has previously been set for a status report August 18, 1986 at 9:15 a.m.

**2.** Given the ambiguity in ¶ 13(c), the remedy is not dismissal of part of Corfab's Complaint, but

simply to read it narrowly, excluding such damages for the present.