ARKWRIGHT MUTUAL INSURANCE COMPANY, as subrogee of Illinois Bell Telephone Company, and Illinois Bell Telephone Company, Plaintiffs,

v.

GARRETT & WEST, INC., Defendant.

GARRETT & WEST, INC., Third–Party Plaintiff,

v.

NORTHERN TELECOM INC., a Subsidiary of Northern Telecom Ltd., Third–Party Defendant.

No. 90 C 6584.

United States District Court, N.D. Illinois, E.D.

March 31, 1992.

Terrence R. Joy, Richard B. Allyn, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., Elenie K. Huszagh, Mark Stephen Grotefeld, Lauren Newman, Robins, Kaplan, Miller & Ciresi, Chicago, Ill., for plaintiffs.

Thomas Francis Lucas, Randi Lyn Cigelnik, Peterson & Ross, Thomas H. Morsch, Sidley & Austin, Chicago, Ill., George A. Platz, Kathleen Lynn Roach, Jared M. Barliant, Sidley & Austin, Thomas R. Phillips, John J. Arado, Edward T. Butt, Jr., James Brian Vogts, Julie Anne Correll, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This suit arises out of the fire that devastated telephone service in the Hinsdale, Illinois area for several months in 1988. The court will assume familiarity with the facts set forth in its earlier opinions issued

in this matter, and will repeat only the essential facts here. Briefly, the fire occurred at Illinois Bell's Hinsdale Central Office (HCO). Arkwright was Illinois Bell's insurer at the time of the fire and is pressing this action as Bell's subrogee (the court will refer to the two in this opinion interchangeably). Arkwright sued Garrett & West (G & W) and AT & T Technologies (AT & T) for $47 million—the costs it incurred in replacing the equipment damaged in the fire. Arkwright has since settled with AT & T; G & W remains the sole defendant. G & W has sued Northern Telecom for contribution, and Northern Telecom has moved for summary judgment on the third-party complaint, arguing that because it is not liable to Arkwright in tort, it cannot be liable to G & W. Northern Telecom is correct and this court accordingly grants its motion.

### Background

Northern Telecom, pursuant to an extensive and detailed contract with Illinois Bell, supplied and installed certain equipment at the HCO. G & W claims that the equipment was defective and that Northern Telecom is therefore strictly liable in tort to Arkwright under Illinois product liability law. Furthermore, G & W claims that Northern Telecom was negligent in its provision and maintenance of the equipment. For purposes of this motion, Northern Telecom is not contesting the facts alleged by G & W, rather it claims that its contract with Illinois Bell precludes any tort liability to Illinois Bell, and thus, any third-party liability to G & W.

The contract between Illinois Bell and Northern Telecom sets forth explicit technical specifications for the equipment provided by Northern Telecom. It also sets forth the specific warranties Northern Telecom made regarding the equipment. In addition, the contract provided that before beginning any installation project, Northern Telecom would prepare a detailed "Method of Procedure" (MOP). A MOP is "written step-by-step procedures outlining the detailed work operations for a specific portion of the job." In preparing each MOP the parties were required to reach agreement on, among other things, installation methods, testing, experience levels of the personnel involved in the project, and possible service impairment hazards. Illinois Bell reviewed and approved all MOPs before Northern Telecom began any work, and no changes could be made to the MOPs without Illinois Bell's approval.

### Discussion

The Illinois Contribution Act, Ill. Rev.Stat. ch. 70, par. 302 provides in part:

> (a) Except as otherwise provided in this Act, where 2 or more persons are *subject to liability in tort* arising out of the same injury to person or property, ... there is a right of contribution among them.... (Emphasis added).

Northern Telecom maintains that, because of the contract, it is not liable *in tort* to Illinois Bell (or its subrogee, Arkwright) and thus cannot be liable for contribution to G & W.

G & W alleges in its third-party complaint that Northern Telecom is strictly liable for introducing a defective product into the stream of commerce, and is also liable for negligently designing, manufacturing, selling and servicing that product. G & W seeks contribution from Northern Telecom in the event G & W is found liable for the damages sustained at the HCO in 1988. G & W's claims against Northern Telecom are tort claims. They are therefore subject to the requirements of the Contribution Act—that is, they are not viable unless Northern Telecom would have been liable to Bell in tort. As the Illinois Appellate Court recently stated:

> Contribution is predicated upon tort, not contract, liability. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197.) Contribution is a statutory remedy which involves a sharing of payment of damage awards and is available to all parties who are subject to liability in tort arising out of the same injury. (*Hennepin Drainage & Levee District v. Klingner* (1989), 187 Ill.App.3d 710, 711, 135 Ill.Dec. 399, 543 N.E.2d 967.)

*Cosey v. Metro East Sanitary Dist.*, 221 Ill.App.3d 205, 163 Ill.Dec. 760, 581 N.E.2d 914 (5th Dist.1991). The first question this court must resolve, then, is whether Northern Telecom is "subject to liability in tort" to Bell. The answer hinges upon the import of the contract between those two entities.

The fire at the HCO caused property damage. That is, it caused the type of injury which is generally redressed according to tort law principles. See *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 86, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) ("Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence.") G & W has cited *Moorman* for the proposition that because Illinois has held that tort theory can be appropriate for suits arising from occurrences such as that in issue here, Northern Telecom may not argue that its contract with Illinois Bell bars G & W's third-party suit. That proposition, however, is clearly unsupported by the *Moorman* holding.

In *Moorman*, the Illinois Supreme Court held that parties could not seek a tort remedy for a purely economic loss. Rather, they were limited to the remedies provided by contract law. G & W would like to use that holding to support the converse proposition—that parties who have suffered losses which are not purely economic are always entitled to seek a tort law remedy. Neither *Moorman* nor any other Illinois case discovered by this court supports that proposition. Rather, as discussed below, Illinois courts permit parties to limit or negate their tort duties by contract.

Generally, Illinois courts construe exculpatory clauses strictly against the benefitting party, particularly if that party is also the one who drafted the release. *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 395, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986). Here, the clauses in issue are entitled to some weight since the parties do not dispute that they were fully bargained for by two sophisticated commercial entities. The court thus turns to the specific language of the contract which Northern Telecom claims prohibits G & W's third-party action against it.

Northern Telecom points to two provisions in support of its motion. First, in the section entitled "Warranties", the parties agreed that:

*THE WARRANTIES AND REMEDIES SET FORTH IN THIS CONTRACT CONSTITUTE THE ONLY WARRANTIES OF SUPPLIER WITH RESPECT TO THE COE [Central Office Equipment] AND INSTALLATION THEREOF BY SUPPLIER AND PURCHASER'S ONLY REMEDIES IN THE EVENT SUCH WARRANTIES ARE BREACHED. THEY ARE IN LIEU OF ALL OTHER WARRANTIES, WRITTEN OR ORAL, STATUTORY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY WITH RESPECT TO ANY SERVICES OTHER THAN INSTALLATION SERVICES PROVIDED BY SUPPLIER HEREUNDER, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY WARRANTY BY NORTHERN TELECOM LIMITED. NEITHER SUPPLIER NOR NORTHERN TELECOM LIMITED SHALL BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER, EXCEPT AS PROVIDED IMMEDIATELY BELOW.* (Emphasis in original).

SUPPLIER's liability for indirect or consequential damages shall be limited to:

(1) A maximum of One Million Dollars ($1,000,000) per person for bodily injury damages, including death, or a maximum of Three Million Dollars ($3,000,000) per occurrence, for such damages arising out of an occurrence caused by a breach of the foregoing warranties; and

(2) A maximum of Three Million Dollars ($3,000,000) per occurrence for physical property damages arising out of an occurrence caused by a breach of the foregoing warranties.

Additionally, in the "Default" section of the contract, the parties agreed that:

In no event shall SUPPLIER or SUPPLIER's parents or affiliates be liable for any incidental or consequential damages of any nature whatsoever.

Finally, the parties agreed to indemnify each other in the event of a third party tort action against either of them arising from the indemnifying party's negligence. See Northern Telecom's Rule 12(m) Statement of Material Facts as to Which There is no Genuine Issue, par. 50–53.

While neither the court nor the parties has discovered a case precisely on point, it is this court's opinion that Illinois courts would construe the provisions set forth above as extinguishing, ex ante, any potential tort duties between the parties. The court bases this conclusion upon a number of Illinois cases which have considered the effect of various contracts or contractual provisions on tort actions.

In *Harris v. Walker*, 119 Ill.2d 542, 548–51, 116 Ill.Dec. 702, 519 N.E.2d 917 (1988) the Illinois Supreme Court considered the effect of exculpatory clauses in general. In that case, the plaintiff was injured when he fell from a horse he had rented from defendant. Before riding the horse, plaintiff signed a contract releasing defendant from liability for any injury incurred during plaintiff's foray. The court reaffirmed the longstanding principle that exculpatory contracts may act as absolute bars to negligence claims:

"Regarding contracts that shift the risks of one's own negligence to another contracting party, the general rule is to enforce exculpatory contracts 'unless (1) it would be against a settled public policy of the state to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement.' "

*Id.* at 548, 116 Ill.Dec. 702, 519 N.E.2d 917, citations omitted. The court also observed, however, that exculpatory clauses are not favored and must be strictly construed against the benefitting party, particularly one who drafted the release. *Id.*, citation omitted.

In *Ferentchak v. Village of Frankfort*, 105 Ill.2d 474, 86 Ill.Dec. 443, 475 N.E.2d 822 (1985), the court considered a case in which plaintiffs sought to hold a civil engineer liable because work he had done in accordance with the terms of a contract was in fact insufficient to protect the plaintiffs' home from damage. The civil engineer had contracted with a property developer to design a water drainage system for a group of lots. The contract did not require the civil engineer to set foundation grade levels but, as it turned out, the water drainage system was ineffective with the foundation level of plaintiffs' home. The court held that the defendant's reliance upon the terms of his contract was not misplaced and that the contract did not give rise to a duty to perform work outside its parameters. *Id.* at 480–81, 86 Ill.Dec. 443, 475 N.E.2d 822. Even in considering whether the defendant was negligent in failing to exercise the degree of skill or care required of a civil engineer, the court reiterated that the scope of the engineer's duty in tort was defined by his contract. *Id.* at 481–82, 86 Ill.Dec. 443, 475 N.E.2d 822.

Thus, it is clear that Illinois courts do permit parties to contract away their potential tort liability. The next question, then, is the effect of the particular clauses in issue here. Both the Seventh and the Fifth Circuits have considered the effect of similar clauses under Illinois law, *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603 (7th Cir.1975) and *Illinois Central Gulf Railroad Co. v. Pargas, Inc.*, 722 F.2d 253 (5th Cir.1984), and their holdings are instructive.

In *Gates*, the court noted that the Uniform Commercial Code (adopted in pertinent part in Illinois, see Ill.Rev.Stat. ch. 26, par. 2–719(3)) specifically provides for the limitation of "consequential" damages. The court found that the adoption of that Code provision indicated that Illinois courts would not require "the same degree of specificity in commercial transactions that they might in a consumer context." The standard which the court believed applied to the interpretation of such clauses, at

least in contracts between "commercially sophisticated entities" was the "reasonable businessman" standard, rather than merely the reasonable person standard. *Gates,* 508 F.2d at 616–17.

In the specific contract in issue in *Gates,* the parties had included a paragraph limiting recovery on warranty claims and a second, separate paragraph limiting recovery for "any special indirect or consequential damages". The court held that the second paragraph would be robbed of its meaning if it were construed as limiting only warranty, or contract, claims and that it must therefore be construed as limiting liability for damages "that might be sought in suits based on theories other than breach of warranty." *Id.* at 617.

*Pargas* also concerned the interpretation of a contract which limited recovery "of all indirect, special or consequential damages". The specific question in that case was whether the clause was broad enough to cover damages to the property of third parties, and the Fifth Circuit held that it was. The court said there was no reason, at least none based in Illinois law, not to give effect to the parties' intent to shift the risk of loss, whatever the source, as expressed in their contract. *Pargas,* 722 F.2d at 255.

Based upon all these decisions this court concludes, first, that the parties intended their contract to limit the potential for recovery in tort, and second, that Illinois courts would give effect to that intention, bargained as it was between two commercially sophisticated entities.

Here, as in *Gates,* the contract contains two exculpatory clauses, one which could be construed as relating only to warranties (that is, contract-theory claims) and another, more general clause which simply prohibits recovery of "any incidental or consequential damages of any nature whatsoever." Northern Telecom and Illinois Bell were certainly "commercially sophisticated entities"—they bargained thoroughly over all provisions in their contract, as evidenced by the extensive and thorough nature of the contract. Illinois courts would there-

fore clearly give effect to the clause in issue.

Examining the two criteria set forth in *Harris,* the court finds that it would not violate a settled public policy of Illinois to enforce the exculpatory clauses in the Illinois Bell/Northern Telecom contract as barring a third-party action for contribution. G & W cites worker's compensation cases in support of its argument that public policy requires this court to ignore the exculpatory clauses for purposes of this third-party action. Those cases, however, are not dispositive here.

In cases in which an employee sued someone other than the employer to recover for an injury suffered in the workplace, the courts have held a number of times that the defendant may seek contribution from the employer despite the existence of the workers' compensation laws. See *Doyle v. Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984); *Ballweg v. City of Springfield,* 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373 (1986); *Wilson v. Hoffman Group, Inc.,* 131 Ill.2d 308, 137 Ill.Dec. 579, 546 N.E.2d 524 (1989). In those cases, the court consistently held that the "subject to liability in tort" language of the Contribution Act meant subject to liability *at the time of the occurrence,* whether or not some defense which could be later raised would subsequently immunize the party from a direct suit.

The issue in this case, which no Illinois court has directly addressed, is whether the contractual provisions here are merely defenses, available *after* a suit is commenced and hence not adequate to immunize Northern Telecom from a contribution suit, or whether they worked to immunize Northern Telecom even at the time the tort occurred. This court is convinced by Northern Telecom's argument that the latter proposition is true. By entering the contract with Illinois Bell, and using that contract to define every facet of the parties' relationship, Northern Telecom extinguished the possibility of tort liability to Illinois Bell. That is, Northern Telecom never had any tort duties to Illinois Bell. But for its contract with Illinois Bell,

Northern Telecom would have taken *none* of the actions for which G & W now seeks to impose liability. That proposition is not true in worker's compensation cases.

■ The workers' compensation laws shield employers from unlimited liability for torts against employees. In exchange, employers give up some of the defenses to workers' suits which were available to them at common law, such as assumption of risk. In other words, employers' duties to their employees are not defined by the act providing for worker's compensation; rather, they have tort duties to their employees ab initio. The Act simply permits them to satisfy those duties by making worker's compensation payments.

■ The Contribution Act codifies a strong public policy in favor of allocating the burden of a loss equitably among those responsible for that loss. See *Stephens v. McBride*, 97 Ill.2d 515, 522–23, 74 Ill.Dec. 24, 455 N.E.2d 54 (1983). Whenever that policy might be subverted, as it would be here if both Northern Telecom and G & W are in fact liable for the damages at the HCO, the court is required to balance the policy supporting the right to contribution with that supporting immunity from contribution in each particular case.

In *Stephens*, the court balanced the policy supporting contribution against that supporting the notice provisions of the Tort Immunity Act, Ill.Rev.Stat. ch. 85, par. 8–102. The court found that the harm to municipal entities if the notice requirement were waived in contribution actions would be minimal. The court explained that although "[t]imely notice allows the governmental entity the opportunity to examine the location of the occurrence at an early date so that conditions do not change and evidence does not become stale, to plan its budget in light of prospective liabilities, to settle claims and avoid costly civil litigation, and to correct the alleged defective condition so that future injuries and liabilities may be avoided", the fact that the statute itself permitted prospective plaintiffs up to a year to notify the municipality of their claims undermined most of these goals. Accordingly, the court found that waiving the notice period entirely for contribution claims would not significantly harm municipalities.

Here, the court must balance the policy supporting the freedom to contract against that supporting the availability of contribution. The policy supporting the freedom to contract is expressed in both the United States Constitution (Article 1, § 10) and the Illinois Constitution (Article 1, § 16). The policy supporting the right to seek contribution is not. The court is thus compelled to the conclusion that the former policy would trump the latter.

Furthermore, Illinois has a public policy supporting certainty in business relations, strongly supported by Illinois courts. See, for example, *Harris v. Walker, supra*, 119 Ill.2d at 548, 116 Ill.Dec. 702, 519 N.E.2d 917 and cases cited therein. Here, there is no doubt that the contract in issue was fairly bargained for. To subvert the explicit intent of the parties in this case would violate clear and important public policies in Illinois and the United States, and this court is convinced that Illinois courts would not do so.

■ G & W's remaining arguments also fail to convince this court. G & W argues, correctly, that the mere existence of a contract between the parties does not of itself prohibit a tort action. Indeed, it is entirely feasible that the breach of a contract could give rise to both tort and contract claims. See *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 420, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981). That does not mean that all contracts, regardless of their specific language, must be so construed. In other words, to say that the fact that a contract exists is not a bar to a tort action is *not* to say that all contracts must be construed to permit such an action, despite explicit language to the contrary.

G & W cites *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986), in support of its argument that it is entitled to bring in Northern Telecom as a third-party. The suit in *Scott & Fetzer* arose out of a warehouse fire. One of the tenants in the

warehouse, Montgomery Ward, had contracted with a company to install a fire protection system. The system failed, a fire occurred and a number of warehouse tenants, in addition to Montgomery Ward, suffered extensive property damage. The court determined that the other tenants in the warehouse whose property was damaged in the fire had a right to sue both the company which had installed the fire protection system and Montgomery Ward. Thus, in contrast to this case, the action by non-contracting parties was not brought pursuant to the Contribution Act.

The court considered the effect of an exculpatory clause on a claim for contribution because Montgomery Ward, the defendant in the initial suit, attempted to bring in the company which had installed the fire protection system as a third-party defendant. The court refused to construe the exculpatory clause as barring the third-party suit since its language did not explicitly do so. *Id.* at 395, 98 Ill.Dec. 1, 493 N.E.2d 1022. That is quite a different factual and procedural setting from the one here. In the instant case, the contract explicitly bars a tort action between Illinois Bell and Northern Telecom. Indeed, the court implied in *Scott & Fetzer* that this type of bar would be binding. See *id.* at 391, 98 Ill.Dec. 1, 493 N.E.2d 1022.

The contract between Northern Telecom and Illinois Bell preempts tort duties and thus precludes tort liability. Accordingly, Northern Telecom cannot be held liable to G & W under the Contribution Act.

*Conclusion*

Northern Telecom's motion for summary judgment is granted.