**STEPAN COMPANY, Plaintiff,**

v.

**WINTER PANEL CORPORATION, Defendant.**

No. 95 C 0762.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 26, 1996.

Laura Smith Tashma, Robert Strelecky, Wildman, Harrold, Allen & Dixon, Chicago, IL, for plaintiff.

George N. Vurdelja, Jr., John M. Heaphy, Jr., Griswold L. Ware, Vurdelja & Heaphy, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.

On August 15, 1996, Defendant, Winter Panel Corporation ("Winter Panel"), amended its counterclaim, adding: (1) a claim un-

der the Illinois Consumer Fraud Act (Count II); and (2) a claim for negligence (Count III). In response, Plaintiff, Stepan Company ("Stepan"), brought this motion to dismiss both counts under FED.R.CIV.P. 12(b)(6). All parties have consented to have this Court conduct any and all proceedings, including entry of final judgment. For the following reasons, Stepan's motion to dismiss is granted.

## I. *Relevant Background*

Stepan is a manufacturer of Polyurethane foam products, including a product called "Stepanfoam," used in the manufacture of insulation panels. Stepan and Winter Panel have had an on-going relationship since 1990. On April 27, 1993, Stepan and Winter Panel entered into a contract for the purchase of Stepanfoam. Pursuant to the terms of the contract, Stepan delivered the chemicals used to make Stepanfoam. Winter Panel ultimately used the foam to manufacture insulating panels, which were then sold to its customers for use in residential and commercial construction. Subsequently, some of Winter Panel's customers complained that the panels manufactured from the Stepanfoam were unacceptable due to shrinkage and deflection. Consequently, Winter Panel refused to pay the $83,000 it owed Stepan under the contract. Stepan then sued Winter Panel to collect the amount owed and Winter Panel counterclaimed for breach of warranty and contract, seeking $1 million in damages resulting from the alleged defects in the product.

On July 9, 1996, this Court entered an order precluding Defendant from recovering consequential damages in connection with its breach of warranty and contract counterclaims, based on a contractual limitation of remedies provision contained in the parties' agreement. Defendant then filed an amended counterclaim, adding claims for violations of the Illinois Consumer Fraud Act and for negligence. Stepan responded by filing this motion to dismiss.

## II. *Standard of Law*

■ For purposes of a motion to dismiss under FED.R.CIV.P. 12(b)(6), the Court must accept all allegations as true and draw all reasonable inferences in favor of the non-

moving party. *Hishon v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994). The purpose of a motion under FED.R.CIV.P. 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1356 (1990). This provision must be read in conjunction with FED.R.CIV.P. 8(a) "which sets forth the pleading requirements and mandates a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). Since federal courts only require "notice pleading," the pleadings must be liberally construed and mere vagueness or lack of detail alone cannot be sufficient grounds for dismissal. *Lomas Mortg. U.S.A., Inc. v. W.E. O'Neil Construction Co.,* 812 F.Supp. 841 (N.D.Ill.1993). Thus, the test under 12(b)(6) is whether it appears beyond doubt that the non-movant can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

## III. *Analysis*

Plaintiff moves to dismiss Defendant's Consumer Fraud Act counterclaim (Count II) and Negligence counterclaim (Count III). Each count will be addressed in turn.

### A. Count II—Consumer Fraud Act Violation

Plaintiff first argues that Winter Panel's Consumer Fraud Act claim must be dismissed because it fails to allege a nexus between the wrongful conduct and consumer protection concerns.

■ As is apparent from its name, The Consumer Fraud Act is fundamentally concerned with protecting consumers. *Web Communications Group, Inc. v. Gateway 2000, Inc.,* 889 F.Supp. 316, 323 (N.D.Ill. 1995). In spite of this fact, a plaintiff need not be a consumer to proceed under the Act. *See* 815 ILCS 505/1(c). However, when both

parties to the suit are commercial entities which are not consumers "the test for standing is whether the alleged conduct invokes trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Lefebvre Intergraphics, Inc. v. Sanden Machine Limited,* 1996 WL 718189 at *9 (N.D.Ill.1996); *Lake County Grading Company of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.,* 275 Ill.App.3d 452, 458, 211 Ill.Dec. 299, 305, 654 N.E.2d 1109, 1115 (2d Dist.1995) (citations omitted). Consequently, claims brought by such parties under the Consumer Fraud Act "must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues." *Athey Products Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436 (7th Cir.1996).

■ In 1990, the Act was amended to provide that "proof of a public injury, a pattern, or an effect on consumers generally shall not be required." 815 ILCS 505/10a(a). However, the decisions of this district have consistently held that the 1990 amendment to the Consumer Fraud Act "did not eliminate the requirement of a connection to consumers."[1] *Athey Products,* 89 F.3d at 436–37; *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.,* 902 F.Supp. 805 (N.D.Ill. 1995).

Courts have continued to find an inherent consumer nexus requirement, in part, due to the concern that, without such a requirement, contract law would be subsumed by causes of action brought under the Act. *See Scarsdale Builders, Inc. v. Ryland Group, Inc.,* 911 F.Supp. 337, 338 (N.D.Ill.1996). Failure to find a consumer nexus requirement could potentially result in any broken promise being characterized as a false promise, thereby coming within the scope of the

Act. *Scarsdale Builders,* 911 F.Supp. at 338. Consequently, merely by alleging a fraudulent breach of contract, a plaintiff's common-law contract action would be augmented by an additional and redundant remedy under the Act; a result courts have not viewed as intended by the Illinois legislature. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.,* 275 Ill.App.3d 452, 458–59, 211 Ill.Dec. 299, 654 N.E.2d 1109 (2d Dist.1995).

■ Analyzing the allegations in Count II of Defendant's counterclaim, Plaintiff contends that these allegations amount to nothing more than a claim between two commercial entities who have had a longstanding contractual relationship. Defendant, on the other hand, alleges that any consumer nexus requirement is satisfied by the allegation that Stepanfoam is a foam based product designed to avoid the use of CFC pollutants. Defendant argues that this fact satisfies the consumer nexus requirement in that CFC-free products are a subject of general public interest, effecting consumers of other CFC-free products. Furthermore, Defendant claims that consumers are the ultimate end users of the product at issue because the foam is eventually incorporated into insulation panels used in personal residences. Therefore, Defendant argues that consumers were affected by the product's defects and the Plaintiff's alleged misrepresentations.

■ The Court finds that the Defendant has failed to sufficiently allege the necessary consumer nexus. The Court first notes that Winter Panel is not a consumer of Stepan's products. The Act defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his

---

1. The Court notes that the current interpretation of the amended Act seems to disregard the explicit language of the amendment and in fact, appears to render the amendment meaningless. The Seventh Circuit has adopted the holdings of the lower state and federal courts as to the effect of the amendment, *Athey Products,* 89 F.3d at 436–37; however, this Court did not find any opinions in which the Seventh Circuit, itself, articulated the rationale behind this interpretation. The issue of the correct interpretation of

the amendment is not dispositive in this case, due to the Court's alternative holding that the contractual limitation of remedies provision bars the recovery of Defendant's damages under the Consumer Fraud Act count. However, if the issue were dispositive, the Court would be inclined to suggest that this issue would be appropriate for certification by the Seventh Circuit to the Supreme Court for clarification on the correct interpretation of the amendment.

household." 815 ILCS 505/1(e). In the instant case, Winter Panel indisputably purchased the Stepanfoam for incorporation into insulating panels that were later resold for commercial and residential construction. Because Winter Panel is not a consumer, it "must meet the consumer nexus test by alleging that the conduct involves trade practices directed ·to the market generally or otherwise relates to consumer protection issues." *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir.1996). Reviewing the counterclaim, there is no allegation that the complained of conduct implicates consumer protection concerns generally or otherwise relates to such concerns. Additionally, the argument that allegations regarding CFC-free products satisfy the consumer nexus requirement fails because the consumer connection is far too indirect and tenuous to form the necessary nexus.

The Defendant's argument that the misrepresentation affected consumers because consumers ultimately used the product also fails. Almost every product sold by one commercial party to another will ultimately be sold to or otherwise effect a consumer. Consequently, if allegations such as Winter Panel's are sufficient to bring the claim within the ambit of the Act, the Act would apply to nearly all commercial transactions, a result contrary to ·the intent of the legislature as presently interpreted. Based on the above analysis, Stepan's motion to dismiss Count II is granted for failure to allege the necessary nexus between the complained of behavior and consumer protection concerns generally.[2]

### B.  Count III—Negligence

Stepan next argues that Count III of the counterclaim should be dismissed for two

reasons: (1) if the Illinois Supreme Court recognizes the "sudden and calamitous occurrence" exception to the economic loss doctrine, the Defendant's allegation that the product "deteriorated" is inconsistent and contradictory to a finding that the loss was caused by a sudden and calamitous occurrence, thereby removing the loss from the scope of the exception; and (2) the contract's limitation of remedies provision prohibits Winter Panel from recovering consequential damages.

Under the economic loss doctrine, purely economic losses are not recoverable under traditional tort theories. *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Economic losses include those which flow from the damages consequent to qualitative defects, including reduced value, return of purchase price, repair and replacement, and lost profits. *Moorman Manufacturing Co.*, 61 Ill.Dec. at 753, 435 N.E.2d at 450. The distinction between economic and non-economic losses is made based on the notable policy differences underlying tort and contract causes of action. When the losses suffered are economic in nature, the damage flows from the plaintiff's frustrated expectations about the quality and performance of the product. *Moorman*, 61 Ill.Dec. at 753, 435 N.E.2d at 450. Consequently, the appropriate remedy lies in contract and warranty law, rather than in tort law. *Id.*

However, where economic losses are caused by a sudden and highly dangerous occurrence, the risk of injury to persons or other property arises and resort to tort law is warranted. *Id.* In keeping with this principle, the sudden and calamitous occurrence

---

**2.**  Additionally, the Court notes that, although the issue was not argued by the parties, the contractual limitation of remedy provision bars the Defendant's recovery of the damages sought under the Consumer Fraud Act count. Limitation of remedy provisions may operate to prevent recovery of damages under the Act. *See Lefebvre Intergraphics, Inc. v. Sanden Machine Limited*, 1996 WL 718189 at *14–15 (holding that a contractual consequential damages exclusion prevented the plaintiff from recovering such damages under the Illinois Consumer Fraud Act). In the instant case, the limitation of remedies provision specifi-

cally provides "[i]f the product does not conform to the warranties set forth in this section, or if Buyer makes any other claim of any sort whatsoever against Seller, Buyer's exclusive remedy shall be limited to replacement of the product ..." and further, specifically limits the Seller's liability for any consequential damages. Therefore, the clause is sufficiently broad and specific to prohibit the Defendant from collecting the damages sought under its Consumer Fraud Act count and the Plaintiff's motion to dismiss this count would be appropriately granted on this basis as well.

exception allows for recovery of economic damages thus caused. This exception has been applied to allow recovery of economic damages in situations when the sudden occurrence is highly dangerous and presents the likelihood of personal injury or injury to other property. *See Stocking v. Transam Distribution Services, Inc.,* 1985 WL 6226 (N.D.Ill.1985) (Burglary); *Corfab, Inc. v. Modine Manufacturing Co.,* 641 F.Supp. 448 (N.D.Ill.1986) (carbon monoxide leak resulting from break down in heating system); *Sundstrand Corp. v. Lake Shore, Inc.,* 840 F.Supp. 588 (N.D.Ill.1994) (explosion of boiler in unarmed torpedo caused by crack in boiler tubes); *Vaughn v. General Motors Corp.,* 102 Ill.2d 431, 80 Ill.Dec. 743, 466 N.E.2d 195 (1984) (overturning of truck due to brake failure).

In the instant case, the Defendant has alleged that, due to the defects in the Stepanfoam, it has incurred damages including the cost of repairs, loss of productivity, loss of sales and increased manufacturing costs. These damages are clearly economic in nature and therefore, unless the occurrence which caused them was sudden and dangerous, recovery of these damages under a negligence theory is barred by the economic loss doctrine.

The Defendant's mere conclusory allegation regarding the Stepanfoam's sudden loss of stability does not, by itself, trigger the application of the exception. Rather, the Court must analyze the manner in which the damage occurred, looking to see whether it occurred in a way that posed an unreasonable risk of harm to persons or property. The Defendant alleges that the panels manufactured with the Stepanfoam showed "signs of premature deterioration and failure" and that they caused damage "as a result of the sudden loss of stability." The Court finds that these allegations are not of the type covered by the sudden and dangerous occurrence exception.

Although the Plaintiff contends that the allegation regarding the deterioration of the foam is sufficient, on its own, to preclude the application of the exception, this is not the basis on which the Court reaches its conclusion. To the contrary, gradual deterioration may in fact lead to a sudden and calamitous occurrence. *See Corfab, Inc. v. Modine Manufacturing Co.,* 641 F.Supp. 448 (N.D.Ill. 1986) (deterioration of heating units lead to a sudden and calamitous breakdown resulting in the release of carbon monoxide). Rather, the Court's decision is based on its conclusion that the Defendant has failed to allege a "sudden and calamitous occurrence" because the deterioration of the foam was not a highly dangerous occurrence. Based on the facts alleged in the counterclaim, the Court finds that the deterioration of the foam did not present the degree or type of danger and risk that this exception was intended to guard against. Indeed, while the Defendant obviously took pains to ensure that the word "sudden" was included in its allegations, even the Defendant did not see fit to term this occurrence "dangerous" or "calamitous." The Defendant has not only failed to plead the "magic words," by failing to plead that the deterioration of the foam led to a sudden and calamitous occurrence; it has, more importantly, failed to allege any facts from which the Court could find that the deterioration of the foam was a "sudden and calamitous occurrence" warranting the application of this exception. Because the Court concludes that the deterioration of the Stepanfoam did not occur in a way that posed an unreasonable risk of harm, the Court finds that the "sudden and calamitous occurrence" exception is not applicable to the allegations in the negligence claim.

As an alternative basis for recovery, the Defendant's amended counterclaim alleges "... the Stepanfoam ... caused damage to other product and surrounding material and structure not sold with this product, as a result of a sudden loss of stability and as a result of a late (sic) defect created by Stepan's negligence." Here, Defendant appears to be alleging facts similar to those in the *Trans States Airlines* case, in that Defendant is alleging injury to the product and other surrounding material, which may either be construed as damage to component parts of a single product,[3] or as damage to two

---

**3.** If this allegation is construed as a claim for damage to a single product, it would be neces-

separate products.[4]  In the *Trans States Airlines* case, the loosening of bolts in an airplane engine caused an engine fire, which damaged the airframe.  On appeal, the Seventh Circuit certified two questions to the Illinois Supreme Court:

> (1) For purposes of the economic loss doctrine ... does Illinois recognize a 'sudden and calamitous occurrence' exception to the doctrine, under which recovery in tort is possible for injury to the single product? and (2) Can a product and one of its component parts ever constitute two separate products, and if so did the airframe and the engine that failed in this case constitute a single product or two distinct products?

*Trans States Airlines*, 86 F.3d at 726.  Although the Supreme Court has yet to rule on the above questions, even if the court's ruling were to alter the boundaries of the "sudden and calamitous occurrence" exception or its application to facts such as those presented by the instant case, the contractual limitation of remedy provision, discussed below, would still bar the recovery of the damages sought by the Defendant.

▮▮▮▮  The Court next addresses the second argument advanced by the Plaintiff in favor of its motion to dismiss the negligence count of the counterclaim; namely, that the contractual limitation of remedies provision prevents the Defendant from recovering the consequential damages sought.[5]  The Court finds this argument dispositive and concludes that the limitation of remedies provision prohibits the Defendant from recovering the damages sought.

The contract provision provides in relevant part:

> if the product does not conform to the warranties set forth in this section, or if buyer makes **any other claim of any sort whatsoever against seller,** buyer's exclu-

sive remedy shall be limited to replacement of the product or, at seller's option, repayment of the purchase price. . . .  Seller shall not be liable to buyer or anyone else for the cost of any special, indirect, incidental or consequential damages of any kind arising out of or in connection with this product, this contract or any breach of this contract including, but not limited to, any loss or damage resulting from the use of the product in buyer's manufacturing processes or in combination with any other substances.

In a July 9, 1996 order, this Court found that the above language barred Winter Panel from recovering consequential damages under its breach of contract and warranty claims.  The Court now concludes that the same language bars Defendant from recovering such damages under a negligence theory.

▮▮▮▮  The Defendant contends that the above language is an attempt by Stepan to avoid being held liable for its own negligence or an attempt to require Winter Panel to indemnify Stepan for its negligence, both of which Defendant claims are against public policy.  However, contrary to Defendant's assertions, limitation of remedies provisions may apply in a negligence context and are not against the public policy of the state.  While such clauses are generally strictly interpreted and construed against the drafter, clauses arising in contracts between two commercial entities which fall within the scope of the Uniform Commercial Code do not require the same degree of specificity as those that arise in the consumer context.  *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603 (7th Cir.1975); *Arkwright Mutual Insurance Co. v. Garrett & West, Inc.,* 790 F.Supp. 1386, 1389 (N.D.Ill.1992).

Courts have construed limitations of remedy provisions which state "[n]either supplier nor [seller] shall be liable for any incidental or consequential damages of any nature

---

sary for the Defendant to resort to the sudden and calamitous occurrence exception to recover its economic damages.

**4.**  Damage to distinctly separate property is recoverable in tort, without resort to the sudden and calamitous occurrence exception.  *See Moorman Manufacturing Co. v. National Tank Compa-*

*ny,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

**5.**  The contract was appended to the Plaintiff's complaint and is therefore incorporated in the parties' pleadings and may properly be considered on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

whatsoever" or which limit liability for "all indirect, special or consequential damages" as sufficiently broad to extinguish any potential tort liability. *See Gates Rubber,* 508 F.2d at 617; *Illinois Central Gulf Railroad Co. v. Pargas, Inc.,* 722 F.2d 253 (5th Cir. 1984); *Arkwright,* 790 F.Supp. at 1390. In the present case, the limitation of remedies provision states both that "if buyer makes **any other claim of any sort whatsoever against seller,** buyer's exclusive remedy shall be limited to replacement of the product" and that "[s]eller shall not be liable to buyer or anyone else for the cost of any special, indirect, incidental or consequential damages of any kind...." Consequently, the Court concludes that, consistent with the above cases and the Court's earlier ruling on this issue, the limitation of remedies provision is sufficiently broad and inclusive to cover actions predicated on negligence, as well as those based on breach of contract, and it would therefore be appropriate to grant the Plaintiff's motion to dismiss on this ground as well.

## IV. *Conclusion*

The Court finds, for the above reasons, that the Defendant has failed to allege the necessary consumer nexus in its Illinois Consumer Fraud Act count and has failed to allege facts sufficient to bring the case within the scope of the sudden and calamitous occurrence exception. Further, the Court finds that the contractual limitations of remedy is sufficiently broad to extinguishes any tort liability Plaintiff may have otherwise had. Therefore, the Plaintiff's motion to dismiss Counts II and III of the amended counterclaim is hereby granted.