(No. 59217.—

VERLYN VAUGHN, Appellee, v. GENERAL MOTORS
CORPORATION *et al.,* Appellants.

*Opinion filed June 29, 1984.*

Rebecca S. Riddell, of McConnell, Kennedy, Quinn &

Johnston, Chartered, of Peoria, and Patricia S. Harris and Judith A. Zakens, of Detroit, Michigan, for appellant General Motors Corporation.

James E. Lloyd, of Claudon, Lloyd, Barnhart & Beal, Ltd., of Canton, for appellant Art & Gene's Chevrolet, Olds, Cadillac, Inc.

James J. Elson, Chartered, of Canton (James J. Elson and Walter D. Barra, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Verlyn Vaughn, appealed from the order of the circuit court of Fulton County dismissing with prejudice his action against defendants, General Motors Corporation and Art & Gene's Chevrolet, Olds, Cadillac, Inc. The appellate court reversed (118 Ill. App. 3d 201), and we allowed defendants' petition for leave to appeal (87 Ill. 2d R. 315).

In plaintiff's second amended complaint, it is alleged in count I that plaintiff purchased a truck manufactured by defendant, General Motors Corporation (General Motors), and that at the time the vehicle was manufactured and left General Motors' possession "it was defective and unsafe for its intended use in that its braking system was so built as to fail to function and specifically to lock up when subjected to uses which would ordinarily be expected of said truck."

Plaintiff alleged that on or about March 29, 1977, when the truck had been driven only 103 miles, he began to experience problems with the brakes; that, up to the time of the occurrence, the brakes were repeatedly checked and worked on by defendant, Art & Gene's Chevrolet, Olds, Cadillac, Inc. (Art & Gene's), at a total cost of $1,600; and that on November 13, 1978, while he was driving at a low speed, the brakes on the left rear

wheel locked, causing the truck and its load to overturn, resulting in severe damage and rendering said truck unusable and beyond repair. Plaintiff asked that he be awarded $43,966.25 to compensate him for loss of the vehicle, expenses incurred in renting another truck, extra time expended at work, cleanup of the spilled fuel, expenditures for having the brakes repaired by Art & Gene's prior to the occurrence, and the cost of the repair of a bulk fuel tank being carried on the truck at the time.

In count II, plaintiff alleged that General Motors was negligent in its manufacture of the truck, specifically the brakes, resulting in a defective braking system which caused the damages alleged in count I. In count III, plaintiff alleged that defendant Art & Gene's failed to exercise reasonable care in the preparation and inspection of the truck prior to its purchase, and subsequently failed to properly repair the truck, thus permitting the braking system to remain defective, causing the accident, and resulting in the damages to plaintiff alleged in the first two counts.

The circuit court found that in all three counts plaintiff sought to recover in tort for "economic loss," and held that under the authority of *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, plaintiff's second amended complaint failed to state a cause of action. The appellate court, in reversing the judgment, held that *Moorman* did not define "economic loss" as simply monetary damages, but that "the idea of 'economic loss' in *Moorman* is closely allied to the contract concept of loss of benefit of bargain." (118 Ill. App. 3d 201, 204.) The appellate court held that if a defect in a product "creates a dangerous condition and causes damages of a sudden and calamitous nature, the loss, even if it is limited to the product itself, is considered property damage and the injured party has a tort action." 118 Ill.

App. 3d 201, 204.

Defendants contend that "policy considerations do not support the appellate court's judgment." They argue that product liability law was developed to overcome the problems with privity of contract in warranty litigation and to transfer the burden from persons injured by defective products to the manufacturers of those products, who are better able to afford the costs of those injuries. They argue that where privity is not a problem and where the purchaser is not injured the General Assembly intended that the rights of the parties be governed by the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*). They argue, too, that under the Code the purchaser is able to protect himself against products which do not perform as promised by contemplating such a risk at the time of the making of the bargain, and contracting with the manufacturer for appropriate warranties. Thus, they assert, plaintiff should be left to his contract for possible relief. They contend further that plaintiff had accepted the defect because his first formal complaint about the brakes was made after he had driven the vehicle for 19 months.

Plaintiff contends that it is unrealistic to assume that purchasers of trucks are able to protect themselves from risks of this nature through the bargaining process. He argues that defendants' failure to correct the problem with the brakes over a period of 19 months should not prevent his asserting his rights under tort law, and that his tort remedies should not be foreclosed merely because of his good fortune in not having suffered personal injuries.

The parties apparently agree that *Moorman* is dispositive of the issues in this case, but disagree as to its interpretation. In *Moorman* the plaintiff had purchased a grain-storage tank which developed cracks and required repairs and reinforcement. Plaintiff attempted to recover

from the manufacturer for the cost of repairs and loss of use of the tank. The court, holding that the plaintiff could not recover for solely "economic loss" under tort theories of strict liability and negligence, said:

"Our examination of the considerable number of arguments advanced on both sides of the issue leads us to reject imposition of a strict liability in tort theory for recovery of solely economic loss.

We do hold, however, that when a product is sold in a defective condition that is unreasonably dangerous to the user or consumer or to his property, strict liability in tort is applicable to physical injury to plaintiff's property, as well as to personal injury. When an unreasonably dangerous defect is present, such as the truck's nonfunctioning brakes in *Seely,* and physical injury does, in fact, result, then '[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them.' (*Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 19, 403 P.2d 145, 152, 45 Cal. Rptr. 17, 24. See Prosser I, 69 Yale L.J. 1099, 1143 (1960); Restatement (Second) of Torts sec. 402A (1965).) This comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, *i.e.,* when a product is unfit for its intended use. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1169. See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 19, 403 P.2d 145, 152, 45 Cal. Rptr. 17, 24.

\* \* \*

The demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred. (*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165, 1169.) As one commentator observed in apply-

ing the definition of economic loss with respect to damage to the product:

> 'When the defect causes an accident "involving some violence or collision with external objects," the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. It is also important to distinguish between "direct" and "consequential" economic loss. \*\*\* Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.' (Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L. Rev. 917, 918 (1966).)" (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 81-83.)

The court also said:

> "Tort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence of the nature described above. \*\*\* As Dean Prosser has stated:
>
> > 'There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes \*\*\*.' Prosser, Torts sec. 101, at 665 (4th ed. 1971)." 91 Ill. 2d 69, 86.

We agree that *Moorman* is dispositive of the issues here, and we hold that recovery for plaintiff's loss may be had in tort. The allegations of the complaint, which for purposes of the motion to dismiss must be taken as true, allege a sudden and calamitous occurrence caused by a defect in the product and state a cause of action based on strict liability.

Defendants contend that plaintiff was aware of the con-

dition of the brakes and "chose to live with it" as evidenced by the fact that he had on at least eight occasions over the preceding 19 months returned the truck for repairs, and had continued to use the vehicle with knowledge of its allegedly faulty condition. The argument appears relevant to assumption of risk and comparative fault, neither of which is an issue in this appeal.

Finally, defendants argue that the imposition of tort liability will interfere with the legislative scheme of the Uniform Commercial Code so far as it governs warranties. Defendants contend that potential plaintiffs should be left to bargain with the manufacturer and retailer for warranties to protect themselves from the costs of property damage due to defective products instead of placing the burden on the manufacturer to internalize those costs and to pass them on to the purchasers of its products. Defendants argue that this "price mechanism" allows purchasers to insure themselves. This argument, however, fails to consider the rationale of *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 619-21, for the adoption of the doctrine of strict liability.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*