KUWAKO UEHARA, Plaintiff-Appellant, v. TERRY M. SCHLADE, Defendant-Appellee (Rene Rivero, Defendant).

First District (2nd Division) No. 1—91—2494

Opinion filed September 29, 1992.

Stephen E. Vargo, of Chicago, for appellant.

Bollinger, Ruberry & Garvey, of Chicago (Stuart A. Ringel and John P. Sullivan, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Terry M. Schlade owned a Chicago condominium, which he leased to Rene Rivero. Plaintiff Kuwako Uehara owned the condominium directly below Schlade's. After a fire in Schlade's unit, Uehara filed a negligence suit against Schlade and Rivero for damages to her condominium and to her personal property resulting from the fire department's efforts in putting out the fire as well as for loss of use and incidental expenses while her unit was being repaired.[1] With regard to Schlade, she claimed that her injuries occurred because he breached his duty to maintain his unit in accordance with the "Declaration of Condominium Ownership and of Easements, Restrictions, Covenants, and By-laws" (the Bylaws) of the condominium association and violated his duty to maintain the unit's smoke detectors under the Smoke Detector Act (Ill. Rev. Stat. 1987, ch. 127½, par. 801 et seq.). The court granted Schlade's motion for summary judgment, holding that Uehara had no standing to sue for violation of the Bylaws. Although we disagree with the circuit court's rationale for its order, we nevertheless affirm.

Schlade's motion for summary judgment contained a copy of his lease with Rivero and a transcript of the deposition and report of the fire department investigator. The investigator stated that as a result of his inspection of the fire scene and an interview with Rivero, a clamp-on lamp in the center bedroom of his unit was "the most logical source" of the fire. He also stated, however, that he had certified his report for further investigation of the apartment's wiring and fuse box by an electrician. The investigator mentioned that Rivero had told him that the fuses had been malfunctioning, and he added that the smoke detectors were not operating when he examined the unit after the fire. Schlade argued that under the common law, Rivero had the duty to maintain the unit and thus he, as landlord, could not be held liable for any failure to maintain it. He also claimed that under the Smoke Detector Act, he was obliged

---

[1]Uehara also sued the condominium association and the managing agent for the building. That claim has been settled.

only to furnish operable smoke detectors, not to maintain them, which was Rivero's statutory duty as the tenant in possession. Moreover, he continued, he had no notice that the detectors were not operating, and absent such notice, he had no duty to repair or replace them.

Uehara responded that Schlade agreed under the Bylaws to maintain his unit and that this duty, which encompassed the clamp-on lamp, could not be delegated to Rivero because the Bylaws made no provision for doing so. She argued that Schlade's express covenant in the Bylaws precluded application of the common law of landlord-tenant liability for injuries to third persons. She claimed too that Schlade's lease agreement with Rivero provided that he retain control over his unit for the purpose of its maintenance. She also contended that factual issues existed concerning whether he had breached this duty and whether he had violated the Smoke Detector Act because, in his deposition, Schlade was unable to say how many smoke detectors were in the unit; and he admitted that he had not tested the detectors in the unit nor made an effort to verify that they were working when he leased the apartment to Rivero in October 1987, approximately three months prior to the fire.

In reply, Schlade contended that although Uehara's complaint sounded in negligence, it was bottomed on a breach of contractual duty, and he argued that breaches of contractual duty cannot support tort claims. Moreover, he asserted, Uehara presented no facts, just allegations, supporting her claims and thus summary judgment was proper because she had not raised an issue of fact. Schlade also argued that Uehara had no standing to bring her claim for breach of the Bylaws because under article XI, paragraph 1(b), of the Bylaws themselves, only the condominium association, not a unit owner, could take legal action for a breach of the Bylaws. As for Uehara's argument that the lease agreement between Schlade and Rivero created a duty owed by Schlade to Uehara, Schlade contended, the lease did not expressly create such a duty nor did Uehara demonstrate that she was a third-party beneficiary of the lease. With regard to the Smoke Detector Act, Schlade maintained, his deposition testimony was that the unit was equipped with the number of detectors the Act required and that this testimony was unrebutted. He therefore concluded that there was no issue of material fact as to his violation of the statute.

After hearing argument, the circuit court granted Schlade's motion for summary judgment, apparently basing its ruling on

Uehara's lack of standing. The court also commented in passing that "you can't superimpose a tort on a contract action, on a breach of contract action."

# I

Before reaching the merits of Uehara's appeal, we first must determine whether the circuit court correctly ruled that Uehara has no standing to bring a claim for any breach of the Bylaws. Uehara concedes that article XI of the Bylaws permits the Board to file such a suit,[2] but she insists that this provision does not transfer wholesale an individual owner's right to sue for damages personal to that individual owner, emphasizing that nowhere is this right said to be exclusive of the unit owners' rights to pursue legal remedies for individual wrongs. She points in support to article XII, paragraph 3, of the Bylaws, which provides, among other things, that unit owners agree to waive claims against fellow unit owners for casualty damage to their units or to any personal property located therein if such damage is covered by insurance. Logically, she argues, this provision implies that article XI's creation of the Board's right to sue under certain circumstances should be seen as a grant of power expanding the association's rights rather than as a limitation on the right of unit owners themselves to do so.

Schlade counters with the position he espoused successfully before the circuit court: article XI transfers to the Board the exclusive right to sue for any breach of the Bylaws. Parties have the power to limit their rights to seek legal remedies, he maintains, which the unit owners did here. The waiver provision is no help to Uehara either, Schlade continues, because it does not address claims like this one, which is based on a breach of the Bylaws. In Schlade's view, whether the waiver provision would apply to a claim for breach of duty from a source other than the Bylaws is a question not before this court. Accordingly, he maintains, the rule of contract construction that specific terms govern over general terms is controlling here. Lastly, he claims that the waiver provi-

---

[2]Article XI, paragraph 1, states as follows:
"1. *Abatement and Enjoinment.* The \*\*\* breach of any restriction, covenant or provision herein contained, shall give the Board the right \*\*\* to enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any breach. \*\*\* Any and all of such rights and remedies may be exercised at any time and from time to time, cumulatively or otherwise, by the Board."

sion rests on section 9.1 of the Condominium Property Act (Ill. Rev. Stat. 1987, ch. 30, par. 309.1), which concerns claims made under statutorily required insurance, and that, additionally, the waiver provision is an agreement to relinquish the right to pursue claims against other owners for damage to personal property to the extent that the loss is insured, which implies that an owner like Uehara who allows her insurance coverage to lapse may not invoke the waiver provision here.

Uehara replies that under section 12 of article I of the Illinois Constitution, she has a right to sue in tort for injury to her property, and that condominium associations derive rights only from the Condominium Property Act and each association's bylaws. Agreeing that parties may contract to limit their right to legal recourse, she insists that the intent to do so must be stated unambiguously. Uehara also quarrels with Schlade's interpretation of the waiver provision as inapplicable to actions for breach of the Bylaws because it does not differentiate such breaches from other wrongs. Uehara agrees that specific contract terms take precedence over general terms, but she argues that this rule of construction applies only in the event, not relevant here, of inconsistency or ambiguity. She further contends that, with regard to waiver of insured losses of personal property, nothing in the record addresses the existence of insurance coverage for the loss of her personal property.

■ We must disagree with the circuit court's interpretation of article XI and its effect on Uehara's standing to bring her claims. Pursuant to this provision, the unit owners, including Schlade and Uehara, agreed that the Board "shall" have the right to sue to redress only "the *continuance* of any breach" of the Bylaws. (Emphasis added.) By its plain meaning, then, this provision would not apply to a one-time occurrence such as the fire here. Moreover, even if the provision applied to an injury arising from a single incident, under the circuit court's interpretation, each unit owner's right to recover for individual injuries from breach of the Bylaws would be at the mercy of the Board, and by extension, the unit owners would be required to subsidize any lawsuits filed to enforce individual rights. Were this unusual regime the unit owners' objective, we cannot believe that they would have neglected to explicitly express their intent to depart so radically from the general practice of not merely allowing but rather *requiring* individuals to assert their own rights. Consequently, we hold that although in article XI the unit owners agreed to allow the Board to sue on their behalf for certain matters, this provision does not represent an agreement to strip the

unit owners of their right to bring suit themselves. Thus, it does not preclude Uehara from bringing suit against Schlade for violation of the Bylaws. In addition, even if article XI were a bar to such claims, it would not have the same effect on an action arising from a statutory violation, such as Uehara's claim for Schlade's alleged noncompliance with the Smoke Detector Act. Having concluded that Uehara has standing, we turn to the merits.

## II

■ Summary judgment has been defined as "a drastic means of disposing of litigation," which will be granted "only when the right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) All evidence in the record must be construed "strictly against the movant and liberally in favor of the opponent." (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Inferences may be drawn from undisputed facts, and if different inferences are reasonable, an issue of fact exists. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272, 586 N.E.2d 1211, 1215.) In considering a summary judgment motion, the circuit court's task is not to try any issue of fact, but rather

> "to determine whether any issues of material fact exist. [Citation.] Summary judgment is proper where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (*Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 386-87, 559 N.E.2d 961, 969, citing Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

(See also *American National Bank & Trust Co. v. National Advertising Co.* (1992), 149 Ill. 2d 14, 22, 594 N.E.2d 313, 316.) To survive a defendant's motion for summary judgment, a plaintiff need not meet the burden of proof a trial demands; instead, he need only provide some factual basis that arguably would entitle him to judgment. (*American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 629, 585 N.E.2d 1115, 1119-20 (similar to burden on directed verdict motion).) In a negligence action, a plaintiff must therefore raise a question of material fact concerning the elements of the cause of action, that is, whether the defendant "had a duty to conform to a certain standard of conduct, [whether] he failed to meet that standard, and [whether] his failure was the proximate or legal cause of the plaintiff['s] damage. ***

Whether there was a legal duty \*\*\* is a question of law." (*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480, 475 N.E.2d 822, 825.) We are also mindful that when the rights of an owner of a condominium are at issue, courts must harmonize the provisions of the Condominium Property Act (Ill. Rev. Stat. 1987, ch. 30, par. 301 *et seq.*) with the association's bylaws and declaration, construing them as a whole. *Wolinsky v. Kadison* (1983), 114 Ill. App. 3d 527, 532, 449 N.E.2d 151, 156.

This court reviews summary judgment orders *de novo*. (*Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083, 1086.) We may affirm the circuit court's result on any basis the record permits, even if not the ground on which the circuit court based its ruling. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12.

The first element a plaintiff must demonstrate in a negligence claim is that the defendant owed her a duty of reasonable care. As explained above, Uehara claims that Schlade owed her a duty to maintain his unit and that the source of this duty may be found in the Bylaws or, alternatively, in the Smoke Detector Act (Ill. Rev. Stat. 1987, ch. 127½, par. 801 *et seq.*).

■ The circuit court implied that had it been necessary to decide whether Uehara could recover from Schlade for a breach of the Bylaws, it would have been compelled to rule in Schlade's favor because one generally cannot recover in tort for breaches of contract. Although this is the general rule under *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, we agree with Uehara that an exception exists when the breach results in personal or property damage from a "sudden and calamitous occurrence" such as the fire here. (*Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 436, 466 N.E.2d 195, 196-97 (allowing strict liability claim for injury from contract breach).) The Smoke Detector Act imposes certain obligations as well. Consequently, Uehara is not barred at law from recovering in tort if Schlade breached his duty of reasonable care under the Bylaws or the statute.

As for Schlade's duty to her under the Bylaws, Uehara cites article VII, paragraphs 2, 3, and 9, which state as follows:

"2. \*\*\* Owners shall be obligated to maintain and keep in good order and repair their respective Units;

3. \*\*\* Owners shall not permit anything to be done or kept in their respective Units \*\*\* which will result in the cancellation of insurance on the Building, or contents thereof, or which would be in violation of any law;

* * *

9. No noxious or offensive activity shall be carried on in any Unit ***, nor shall anything be done thereon, either willfully or negligently, which may be or become an annoyance or nuisance to the other Owners or Occupants."

Uehara insists, as she did in the circuit court, that these provisions obligate Schlade personally and that he could not delegate these obligations to Rivero because the Bylaws expressly impose these duties on the unit owners and make no provision for delegation to others who may occupy the units. Uehara scoffs at Schlade's narrow construction of the term "unit," under which personal property such as the lamp is not included. She finds this interpretation contrary to article XII, paragraph 11's caution that the Bylaws "shall be liberally construed to effectuate [their] purpose." She also notes that in derogation of the common law, landlords may retain the duty to maintain and repair leased premises, as Schlade did here under the lease agreement, and that there is no difference in retaining the duty under a lease and retaining it under the Bylaws.

■ Uehara's argument that Schlade could not, or did not, delegate to Rivero the duty under the Bylaws to maintain the unit is not persuasive. Indeed, the Bylaws themselves provide that tenants step into a unit owner's shoes with regard to such obligations. Article XII, paragraph 7, provides that "each tenant under a lease for a Unit[ ] accepts the same subject to all restrictions, conditions, covenants, [and] reservations, *** and all impositions and obligations hereby imposed shall be deeded and taken to be covenants running with the land, and shall bind any Person having at any time any interest or estate in the Property." This language tells us that the unit owners agreed that tenants in these units would assume the obligations that the Bylaws imposed on unit owners who leased out their units, including the duty to maintain the unit, as would occur at common law. Just as we could find no intent by the unit owners to deviate dramatically from the general rule in our analysis of article XI above, so too do we find no indication here of an intent to preempt the common law of landlord-tenant relations. Similarly, we find nothing in the lease agreement between Schlade and Rivero that indicates that Schlade retained the obligation to maintain the unit in derogation of the common law. Thus, from the documents before us, we hold that when Schlade leased his unit to Rivero, he could, and did, delegate all duty to maintain the unit, to refrain from doing or keeping things in the unit that were illegal or that would result in cancellation of insurance coverage, and to refrain

from activities that are "noxious," "offensive," "annoying," or a "nuisance." As a result, absent such duties, Schlade cannot be held liable as a matter of law for injuries resulting from the breaches alleged.

■ Even if Schlade could not delegate his duties under the Bylaws, Uehara's claims thereunder nevertheless would fail. Uehara presented no facts in support of her allegation that Schlade violated paragraphs 3 and 9 of article VII by allowing anything to be kept in his unit that did or would result in cancellation of insurance or that was in violation of the law, nor did she make an effort to explain how Schlade's conduct would fall within the usual meaning of "noxious" or "offensive" or "annoying" or "a nuisance."

■ In addition, the two items Uehara alleges that Schlade did not maintain under paragraph 2 are a clamp-on lamp and statutorily required smoke detectors.[3] The lamp does not fall within the definition of "unit" in article VII, paragraph 2, of the Bylaws[4] because its plain meaning includes only real property, not personal property like the lamp here. As a result, the duty under the Bylaws to maintain the unit did not encompass the lamp. Because Schlade had no duty with regard to the lamp, Uehara's negligence claim for failure to maintain the lamp must fail as a matter of law. Contrary to Uehara's view, we find no contradiction between enforcing the unambiguous definition in the Bylaws and the unit owners' expressed desire for liberal construction of the Bylaws "to create a uniform plan for the operation of a first-class condominium building," for we see little connection between expanding the definition of "unit" to include a piece of furniture and creating "a uniform plan" for keeping property values high.

Unlike the lamp, however, smoke detectors would not be excluded under the above interpretation of the word "unit," because the latter are improvements to the real property, triggering the

---

[3]Uehara also claimed that Schlade was required to maintain the wiring, but article III, paragraph 1, of the Bylaws defines electrical wiring as part of the common elements, which, by definition, are not part of a unit.

[4]The Bylaws define a "unit" as follows:

> "A part of the Property within the building including one or more rooms, occupying one or more floors or part or parts thereof, designed and intended for any type of independent use permitted by the Declaration and having lawful access to a public way."

"Property" is further defined as "all land, property and space comprising the [tract of real estate], all improvements and structures constructed or contained therein or thereon ***."

duty to maintain them, the standard for which is defined by the Smoke Detector Act. Violation of this statute, Uehara claims, would be *prima facie* evidence of negligence so long as the statute was designed to protect human life or property, she was within the scope of the statute's protection, and her injury was a direct and proximate result of the violation. This statute unambiguously is intended to protect life and property, she argues, so Schlade's violation constitutes *prima facie* negligence. She emphasizes that the fire department investigator testified at his deposition that the detectors were not working when he inspected them after the fire and Schlade testified at his deposition that he was unsure of the number of detectors, had not inspected or tested them prior to leasing the unit to Rivero, and did not know if they worked when Rivero moved in.

Schlade responds that Uehara has raised no issue of fact on his alleged violation of the Act, as opposed to Rivero's possible violation. He claims that his duty was limited to installing detectors and that the evidence before the court on his motion supported his position: (1) he had installed smoke detectors as the statute required; (2) Rivero did not notify him that the detectors were inoperable or that the batteries did not work; (3) the fire inspector did not know if the detectors were operable at the time of the fire; and (4) he was not cited for noncompliance with the Act. To raise a question of fact that would survive his motion, he argues, Uehara had to supply evidence that he had not installed the detectors as required or that he disregarded notice from Rivero that the detectors were not working; his lack of recollection about particulars, he claims, is not enough to raise a factual question. Absent such evidence, he concludes, and in particular absent a citation for violation of the statute, Uehara has not met her burden of presenting facts that support her allegation that he violated the statute. As a result, the grant of summary judgment in his favor was proper.

Uehara replies that there is no evidence that the detectors at issue were ever "in an operating condition." She claims that Schlade's and the fire investigator's testimony, outlined above, constitutes evidence to the contrary, raising a question of fact about his compliance with the statute.

For the standard of care applicable here under both the Bylaws and the statute, we look to the provisions of section 3 of the Smoke Detector Act (Ill. Rev. Stat. 1987, ch. 127½, par. 803), which required Schlade, as landlord, to provide operable smoke detectors at the outset of Rivero's lease term. Under the Smoke Detector Act, a

property owner is responsible for supplying and installing approved smoke detectors "in operating condition" and for "ensur[ing] that such batteries are in operating condition at the time the tenant takes possession of the dwelling unit." (Ill. Rev. Stat. 1987, ch. 127½, par. 803(d).) At his deposition, Schlade stated that he had installed them as the statute required, but he also conceded that he did not verify that the smoke detectors were operable when he leased the unit to Rivero, an obvious violation of the statute.

■ Even though Schlade admitted the statutory violation, however, this is not enough to allow Uehara's claim to survive summary judgment. One may bring a negligence action based on a statutory violation only if " '(1) plaintiff is a member of the class for whose benefit the [statute] was enacted; (2) it is consistent with the underlying purpose of the [statute]; (3) plaintiff's injury is one the [statute] was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the [statute].' " (*Rodgers v. St. Mary's Hospital* (1992), 149 Ill. 2d 302, 308 (doctor whose X ray defendant lost had private right of action under statute requiring hospitals to retain X rays), quoting *Corgin v. Muehling* (1991), 143 Ill. 2d 296, 312-13.) Here, the statute appears to be intended to protect the lives and property only of the occupants of the dwelling units in which the smoke detectors are required; Uehara, a non-occupant of the dwelling unit at issue, is therefore not a member of the class that the statute was intended to benefit and her injury was not one that the statute was designed to protect. Thus, she has not demonstrated how the statute imposed on Schlade a duty toward her in particular.

In addition, even though Schlade admitted violating the Act, Uehara has not provided any facts supporting her allegation that his breach of statutory duty was either the factual or legal cause of the fire and the subsequent water damage to her unit and her personal property. For example, she did not present evidence that when the fire began, anyone was in the vicinity of Schlade's unit who would have heard the detector and summoned help quickly enough to stop the fire or to prevent the damage to her property. Without providing factual support for this element of her negligence suit against Schlade, Uehara's claim could not survive his summary judgment motion. We note also that even if Uehara had demonstrated a causal connection between her loss of real and personal property and Schlade's breach of duty to her, her consequent financial loss appears to be primarily the result of her own breach of the Bylaws, which require each owner to obtain insurance cover-

age for their personal property. As she admitted in her answers to interrogatories, however, Uehara lacked insurance coverage.

In sum, contrary to the circuit court's ruling, Uehara did have standing to bring her action for violation of the Bylaws, and she could sue in tort for breach of contract under the circumstances here. As a matter of law, however, Schlade had no duty to her under either the Bylaws or the Smoke Detector Act, and even if he had such a duty, Uehara did not present facts supporting her allegation that her losses were caused by his breach of any duty toward her, making summary judgment in Schlade's favor proper. For these reasons, we affirm the judgment of the circuit court.

Affirmed.

SCARIANO and McCORMICK, JJ., concur.