**SUNDSTRAND CORPORATION,
a Delaware Corporation,
Plaintiff,**

v.

**LAKE SHORE, INC., a Michigan
Corporation, Defendant.**

No. 93 C 20097.

United States District Court,
N.D. Illinois, W.D.

Jan. 11, 1994.

Thomas A. McDonald, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for plaintiff.

Dennis J. Cotter, Querrey & Harrow Ltd., Rockford, IL, for defendant.

## ORDER

REINHARD, District Judge.

## INTRODUCTION

Plaintiff, Sundstrand Corporation (Sundstrand), filed a five-count complaint against defendant, Lake Shore, Inc. (Lake Shore), seeking damages arising out of an explosion allegedly caused by a defective product designed, manufactured, installed, tested, assembled and inspected by Lake Shore. Jurisdiction is apparently based on 28 U.S.C. § 1332.[1] Venue is based on 28 U.S.C. § 1391 as the alleged occurrence took place in this district. Lake Shore moved to dismiss Counts III, IV and V of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## FACTS

The following facts are derived from the allegations contained in Sundstrand's complaint, are taken as true, and are viewed in a light most favorable to Sundstrand. *See Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). In 1989, Lake Shore designed, manufactured, installed, inspected, assembled and tested a boiler to be assembled in an unarmed torpedo that Sundstrand was testing at its Stillman Valley, Illinois facility. On or about September 9, 1989, the unarmed torpedo containing the boiler "exploded." Count I alleges that Lake Shore negligently manufactured, inspected or tested the boiler by allowing a crack to occur or develop in the boiler tubes or leaving the crack therein which left the boiler in an "inoperational, nonfunctional and dangerous condition." Lastly, Count I alleges that as a direct and proximate result of Lake Shore's negligence, Sundstrand suffered "real and personal property damage, business interruption losses, and extra expense loses [*sic*]."

Count II realleges the factual allegations of Count I and adds allegations pertaining to its claim for strict liability. Additionally, Count II states that Lake Shore breached its

1. Sundstrand is advised to amend its pleading to specifically allege Lake Shore's state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

duty in that the crack in the boiler tubes "could result in an explosion ... suddenly and without warning." Count II also alleges that the explosion "caused damage" and "caused interruption of ... business and loss of profits."

Counts III, IV and V all reallege the factual allegations of Count I and seek recovery for breach of contract, breach of the implied warranty of fitness for a particular purpose, *see* 810 ILCS 5/2–315 (1993), and breach of the implied warranty of merchantability, *see* 810 ILCS 5/2–314 (1993), respectively. Count III further alleges that the explosion caused damage to real and personal property, business interruption losses and extra expenses. Counts IV and V claim that the explosion caused real and personal property damage as well as damage to "its business."

## CONTENTIONS

Lake Shore contends that Counts III, IV and V should be dismissed because, under *Seegers Grain Co. v. United States Steel Corp.*, 218 Ill.App.3d 357, 160 Ill.Dec. 793, 800, 577 N.E.2d 1364, 1371 (1st Dist.1991), Sundstrand is limited to tort recoveries only for its noneconomic losses. Sundstrand responds that the *Seegers* decision: (1) misapplies the doctrine announced in *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); (2) unconstitutionally usurps the legislature's power to create implied warranty claims; (3) impermissibly ignores the contractual rights of the parties; (4) denies Sundstrand its right under Illinois law to plead alternatively; and (5) is distinguishable from this case.

## DISCUSSION

As noted earlier, in considering Lake Shore's motion to dismiss, this court must take all the well-pleaded facts as true and view them in the light most favorable to Sundstrand. *See Perkins,* 939 F.2d at 466. Dismissal is improper "unless it appears beyond doubt that [Sundstrand] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ It is also important to note that in a diversity case this court has a duty to apply the state law that would be applied in this context by the Illinois Supreme Court. *Kaplan v. Pavalon & Gifford,* 12 F.3d 87, 89 (7th Cir.1993). Of course, cases decided by the Illinois Supreme Court are the most persuasive evidence of how that court would resolve the legal issues presented here. *Kaplan,* 12 F.3d at 89. Decisions of the appellate courts of Illinois, while not binding, are useful evidence of what the Illinois Supreme Court would do in a similar case. *Kaplan,* 12 F.3d at 89.

■ Lake Shore's basis for its motion to dismiss Counts III, IV and V is premised entirely upon the Illinois Appellate Court decision in *Seegers Grain.* There, the appellate court held that "where no personal injury is involved, actions to recover noneconomic loss in relation to a product must be had within the framework of tort law, and no contract or implied warranty action under the UCC will lie." *Seegers Grain,* 160 Ill. Dec. at 801, 577 N.E.2d at 1372. Additionally, the court concluded that the issue of whether an action is one for economic or noneconomic loss is one of law to be decided by the court. *Seegers Grain,* 160 Ill.Dec. at 801, 577 N.E.2d at 1372.

While the Illinois Supreme Court has not directly decided the issue resolved by *Seegers Grain,* it has definitively answered the question of how to determine whether a loss is economic or noneconomic. The seminal case in that regard is *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). In *Moorman,* the supreme court held that a party who seeks relief from damage caused by a defective product may not proceed in tort where the losses suffered are purely economic. In so holding, the supreme court painstakingly considered the difference between economic and noneconomic loss. Distillation of that analysis results in a complex but rather basic conclusion reached by the supreme court. "[W]here only the defective product is damaged, economic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations cannot be recovered under" strict liability or negligence.

*Moorman,* 61 Ill.Dec. at 753–54, 435 N.E.2d at 450–51. On the other hand, a sudden and dangerous occurrence arising out of the product's defect is "best served by the policy of tort law." *Moorman,* 61 Ill.Dec. at 753, 435 N.E.2d at 450.

The supreme court, subsequent to *Moorman,* elaborated that the "demarcation between physical harm or property damage on the one hand and economic loss on the other usually depends on the nature of the defect and the manner in which the damage occurred." *Vaughn v. General Motors Corp.,* 102 Ill.2d 431, 80 Ill.Dec. 743, 745, 466 N.E.2d 195, 197 (1984). In *Vaughn,* the supreme court utilized the phrase "sudden and calamitous" to characterize the type of occurrence that would result in noneconomic damage and thus trigger tort liability. *Vaughn,* 80 Ill.Dec. at 745, 466 N.E.2d at 197.

While the Illinois Supreme Court has never directly said that a plaintiff who seeks recovery for purely noneconomic damages may do so only in tort, it has never said otherwise. Certainly, it has drawn a line between economic and noneconomic loss and, in doing so, has relied on the distinct policy differences underlying tort and contract/warranty causes of action. For purposes of this court's inquiry here, the dispositive question is whether there is any suggestion or implication in any of the relevant supreme court cases which would cast doubt on the holding of *Seegers Grain.* This court finds none.[2]

In concluding that the holding in *Seegers Grain* would in all probability be the holding of the Illinois Supreme Court if it were presented with the issue, this court is careful to note that under federal pleading requirements a plaintiff would be able to plead alternatively, *see* Fed.R.Civ.P. 8(a), if the facts alleged in the complaint could support the alternative claims. In this case, however, Sundstrand has alleged in each of the counts of its complaint that the operative occurrence was an explosion that resulted in property

damage, business interruption and lost profits.[3] Thus, under the facts as alleged here, Sundstrand can only recover in tort as the alleged occurrence resulting in the damage, an explosion, is sudden and calamitous.

This court is unpersuaded by Sundstrand's other arguments regarding the efficacy of the *Seegers Grain* decision. For example, Sundstrand contends that the *Seegers Grain* court unconstitutionally disregarded statutorily created rights under the UCC. A reading of *Seegers Grain,* however, reveals that the court merely decided that the UCC remedies at issue were unavailable to a plaintiff under certain factual circumstances. Such a decision is well within the confines of an appellate court's power in interpreting state law.

Sundstrand further maintains that the *Seegers Grain* decision ignores the parties' rights to contract. This argument misses the mark, however. Under *Moorman,* and its progeny, there can be no breach of contract or warranty recovery for a sudden and calamitous occurrence. Where an occurrence is sudden and calamitous, the harm is to the plaintiff's right to be free from the hazardous risks of a product rather than to the business expectations that the law of warranty or contract is designed to protect. *See Moorman,* 61 Ill.Dec. at 753, 435 N.E.2d at 450. Hence, absent any harm to the business expectations arising under the contract, there is no recovery in contract. Furthermore, the parties remain free under *Seegers Grain* to contract in order to preserve their rights concerning economic losses, that is, those losses associated with contract law and contract remedies and arising out of a non-sudden and non-calamitous occurrence.

Lastly, this court does not find *Seegers Grain* sufficiently distinguishable to render it inapplicable to the present case. There is nothing in *Moorman* or its progeny to suggest that, where privity exists, a plaintiff may maintain a contract or warranty action to

---

**2.** This court notes that under another Illinois Appellate Court decision interpreting *Moorman,* Sundstrand will be entitled to recover lost profits and damages to the product itself if it prevails on its tort claims. *See American Xyrofin, Inc. v. Allis–Chalmers Corp.,* 230 Ill.App.3d 662, 172

Ill.Dec. 289, 297, 595 N.E.2d 650, 658 (2d Dist. 1992).

**3.** Sundstrand also alleged in Count II that the crack in the boiler tube could result in a sudden and unwarned explosion.

recover noneconomic losses arising out of a sudden and calamitous event. Rather, the operative distinction in this context is whether the loss is economic or noneconomic. *See Szajna v. General Motors Corp.*, 115 Ill.2d 294, 104 Ill.Dec. 898, 905, 503 N.E.2d 760, 767 (1986).

### CONCLUSION

For the foregoing reasons, Lake Shore's motion to dismiss Counts III, IV and V of Sundstrand's complaint is granted.